# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| -------------------------------------------------x | | |
| In re | : | Chapter 11 |
| | : | |
| WASHINGTON MUTUAL, INC., *et al.*,[1] | : | Case No. 08-12229 (MFW) |
| | : | |
| Debtors. | : | |
| -------------------------------------------------x | | |
| JPMORGAN CHASE BANK, NATIONAL | : | |
| ASSOCIATION, | : | |
| | : | |
| Plaintiff, | : | Adversary No. 09-50551 (MFW) |
| | : | |
| v. | : | |
| | : | |
| WASHINGTON MUTUAL, INC. AND | : | |
| WMI INVESTMENT CORP., | : | |
| | : | |
| Defendants and | : | |
| Counterclaimants, | : | |
| | : | |
| and | : | |
| | : | |
| FEDERAL DEPOSIT INSURANCE | : | |
| CORPORATION, | : | |
| | : | |
| Additional Defendant | : | |
| for Interpleader claim. | : | **Re: Docket No. 73 & 77** |
| -------------------------------------------------x | | |

(*caption continued onto next page*)

---

[1]    The Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395).

```
-------------------------------------------------------------x
WASHINGTON MUTUAL, INC. AND          :
WMI INVESTMENT CORP.,                :
                                     :
                Plaintiffs,          :       Adversary No. 09-50934 (MFW)
                                     :
        v.                           :
                                     :
JPMORGAN CHASE BANK, NATIONAL        :
ASSOCIATION,                         :
                                     :
                Defendant.           :
                                     :
        and                          :
                                     :
FEDERAL DEPOSIT INSURANCE            :
CORPORATION,                         :
                                     :
                Intervenor-Defendant.:       Re:  Docket No. 74 & 78
-------------------------------------------------------------x
```

## DEBTORS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE MOTIONS OF JPMORGAN CHASE BANK, N.A. AND THE FEDERAL DEPOSIT INSURANCE CORPORATION FOR LEAVE TO APPEAL

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Neil R. Lapinski (DE Bar No. 3645)
Shelley A. Kinsella (DE Bar No. 4023)
ELLIOTT GREENLEAF
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone:  (302) 384-9400
Facsimile:  (302) 384-9399

(Additional Counsel Listed on Signature Page)

*Special Litigation and Conflicts Counsel to
Washington Mutual, Inc. and WMI Investment Corp*

July 24, 2009

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

SUMMARY OF ARGUMENT ..................................................................................1

BACKGROUND ......................................................................................................3

    A.    The DC Action...........................................................................................3

    B.    The Bankruptcy Proceedings....................................................................5

        1.    The JPMC Adversary Proceeding ...............................................5

        2.    The Turnover Action ...................................................................6

    C.    The Bankruptcy Court's Ruling Denying Motions by the FDIC and JPMC to Stay the Adversary Proceedings.........................................................7

I.    JPMC AND THE FDIC ARE NOT ENTITLED TO APPEAL AS OF RIGHT ...............9

    A.    The Bankruptcy Court's Denial of the Stay Motions is not an Appealable Final Order...........................................................................................10

    B.    The Bankruptcy Court's Ruling is not Appealable Under the Collateral Order Doctrine......................................................................................12

        1.    There is no "Important" Issue Warranting a Departure from the General Rule Against Interlocutory Appeal .............................14

        2.    The Bankruptcy Court's Decision is Reviewable upon Final Judgment.................................................................................20

II.    JPMC AND THE FDIC ARE NOT ELIGIBLE FOR LEAVE TO APPEAL .................26

    A.    There is no "Substantial Ground for Difference of Opinion" Warranting Interlocutory Appeal..............................................................................27

    B.    An Interlocutory Appeal Would Undermine, Rather than Promote, the Efficient Resolution of Debtors' Bankruptcy.........................................28

    C.    There are no Exceptional Circumstances Justifying Interlocutory Appeal ..........30

CONCLUSION ......................................................................................................34

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re After Six, Inc.*,
No. 9304361, 1994 WL 125219 (E.D. Pa. April 12, 1994)....................................................11

*In re All Season's Kitchen, Inc.*,
145 B.R. 391 (Bankr. D. Vt. 1992)....................................................................................23

*In re Aronson*,
No. 94-2497, 1994 WL 497541 (E.D. Pa. Sept. 12, 1994).................................................33

*Auction Co. of Am. v. FDIC*,
141 F.3d 1198 (D.C. Cir. 1998)........................................................................................23

*Bethel v. McAllister Bros., Inc.*,
81 F.3d 376 (3d Cir. 1996) ...............................................................................................10

*In re CPDC Inc.*,
221 F.3d 693 (5th Cir. 2000) ............................................................................................29

*In re Carco Electronics*,
536 F.3d 211 (3d Cir. 2008) ..............................................................................................12

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949) ..........................................................................................................11

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) ..........................................................................................................13

*Crist v. Miller*,
846 F.2d 1143 (7th Cir. 1988) ..........................................................................................26

*De Fuertes v. Drexel, Burnham, Lambert, Inc.*,
855 F.2d 10 (1st Cir. 1988)...............................................................................................26

*Del. River Port Auth. v. Fraternal Order of Police*,
290 F.3d 567 (3d Cir. 2002) .............................................................................................13

*In re Delaware and Hudson Ry. Co.*,
96 B.R. 469 (D. Del. 1989)................................................................................................31

*Delta Traffic Serv., Inc. v. Occidental Chem. Corp.*,
846 F.2d 911 (3d Cir. 1988) .............................................................................................23

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994) ..............................................................................................12, 21, 26

*Dyndul v. Dyndul*,
620 F.2d 409 (3d Cir. 1980) .............................................................................................13

*Henrichs v. Valley View Dev.*,
   474 F.3d 609 (9th Cir.), *cert. denied*, 128 S. Ct. 647 (2007) ........................................17, 18, 20

*FDIC v. McFarland*,
   243 F.3d 876 (5th Cir. 2001) ....................................................................................................20

*Feld v. Zale Corp. ( In re Zale Corp.)*,
   62 F.3d 746, 752 (5th Cir. 1995) ............................................................................................33

*In re First Republicbank Corp.*,
   1990 Bankr. LEXIS 2840 (Bankr. N.D. Tex. June 19, 1990) ..................................................23

*In re Ford Motor Co.*,
   110 F.3d 954 (3d Cir. 1997) ....................................................................................................14

*In re Frascella Enters., Inc.*,
   388 B.R. 619 (Bankr. E.D. Pa. 2008) .............................................................................27, 28, 33

*Grider v. Keystone Health Plan Cent., Inc.*,
   500 F.3d 322 (3d Cir. 2007) ....................................................................................................31

*Gulfstream Aerospace Corp. v. Maycamas Corp.*,
   485 U.S. 271 (1988) .......................................................................................................13, 21, 31

*In re Harris*,
   464 F.3d 263 (2d Cir. 2006) ....................................................................................................29

*In re Hastings*,
   No. 08-5353, 2009 WL 564240 (D.N.J. March 5, 2009) .........................................................11

*Hudson United Bank v. Chase Manhattan Bank of Connecticut, N.A.*,
   43 F.3d 843 (3d Cir. 1994) .............................................................................2, 16, 17, 20, 23, 28

*Katchen v. Landy*,
   382 U.S. 323 (1966) ................................................................................................................33

*Katz v. Carte Blanche Corporation*,
   496 F.2d 747 (3d Cir. 1974) ....................................................................................................27

*In re Keene Corp.*,
   166 B.R. 31 (Bankr. S.D.N.Y. 1994)........................................................................................30

*Lauro Lines S.R.L. v. Chasser*,
   490 U.S. 495 (1989) ............................................................................10, 20, 21, 22, 23, 26

*MacDonald, supra*, at 860, n. 7, 98 S.Ct., at 1553, n. 7 ..............................................................22

*Matter of Magic Restaurants*,
   202 B.R. 24 (D. Del. 1996)...........................................................................................27, 30, 32

*Midland Asphalt Corp. v. U.S.*,
   489 U.S. 794 (1989) ................................................................................................................20

*Nat'l Union Fire Ins. Co. v. City Sav. F.S.B.*,
  28 F.3d 376 (3d Cir. 1994) ...................................................................18

*In re Natale*,
  295 F.3d 375 (3d Cir. 2002) ................................................................11

*Nemours Found. v. Manganaro Corp.*,
  878 F.2d 98 (3d Cir. 1989) ..................................................................14

*Nicholas v. Wyndham Intern. Inc.*,
  No. 2001-147, 2005 WL 1025360 (D.V.I. April 28, 2005)....................23

*Nixon v. Fitzgerald*,
  457 U.S. 731 (1982) ............................................................................14

*In re Norvergence, Inc.*,
  No. 08-1910, 2008 WL 5136706 (D.N.J. Dec. 5, 2008) ..................21, 29

*Norvergence, Inc. v. Nortel Networks*,
  No. 08-1882, 2008 WL 5136842 (D.N.J. Dec. 5, 2008) .......................28

*In re Parker N. Am. Corp.*,
  24 F.3d 1145 (9th Cir. 1994) ...............................................................23

*Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*,
  947 F.2d 49 (3d Cir. 1991) .............................................................19, 23

*Prosser v. Prosser*,
  No. 2009-09, 2009 WL 798842 (D.V.I. March 23, 2009).............10, 11, 21

*Queipo v. Prudential Bache Sec., Inc.*,
  867 F.2d 721 (1st Cir. 1989)................................................................23

*Robinson v. Hartzell Propeller, Inc.*,
  454 F.3d 163 (3d Cir. 2006) ................................................................21

*Rosa v. RTC*,
  938 F.2d 383 (3d Cir. 1991) ..........................................................passim

*Sabree v. Williams*,
  No. 07-2936, 2008 WL 4534073 (D.N.J. Oct. 2, 2008) .......................27

*In re Trimble*,
  No. 07-2115, 2008 WL 782581 (Bankr. D.N.J. March 18, 2008)....................11, 21

*In re Truong*,
  513 F.3d 91 (3d Cir. 2008) ..........................................................1, 10, 11

*Truong v. Kartzman*,
  No. 06-3286, 2007 WL 1816048 (D.N.J. June 22, 2007) .............27, 30, 31

*United States v. Nicolet, Inc.*,
  857 F.2d 202 (3d Cir. 1988) ..........................................................10, 11

iv

*Vill. of Oakwood v. State Bank & Trust Co.*,
  39 F.3d 373 (6th Cir. 2008) ....................................................................... 18, 19

*Vill. of Oakwood v. State Bank & Trust Co.*,
  519 F. Supp. 2d 730 (N.D. Ohio 2007) ........................................................ 19

*Warnick v. NMC-Wollard, Inc.*,
  512 F. Supp. 2d 318 (W.D. Pa. 2007) ........................................................... 13

*We, Inc. v. City of Philadelphia*,
  174 F.3d 322 (3d Cir. 1999) .......................................................................... 12

*Will v. Hallock*,
  546 U.S. 345 (2006) ....................................................................................... 26

## Statutes

11 U.S.C. § 542 ............................................................................................... 6

12 U.S.C. § 1821(d) ........................................................................................ 4

12 U.S.C. § 1821(d)(5)(A)(i) .......................................................................... 4

12 U.S.C. § 1821(d)(6)(A) .............................................................................. 4

12 U.S.C. § 1821(d)(12)(ii) ............................................................................ 19

28 U.S.C. § 158(a) .......................................................................................... 11, 27

28 U.S.C. § 158(a)(1) ...................................................................................... 2, 10

28 U.S.C. § 158(a)(3) ...................................................................................... 27

28 U.S.C. § 1292(b) ........................................................................................ 27

28 U.S.C. §§ 157(b)(2)(A)-(O) ....................................................................... 9

## PRELIMINARY STATEMENT

Washington Mutual, Inc. ("WMI") and WMI Investment Corp. ("WMI Investment," and together with WMI "Debtors"), submit this brief in opposition to (i) the Motion of the Federal Deposit Insurance Corporation (the "FDIC"), as Receiver, in the Alternative, for Leave to Appeal, and (ii) the Motion of JPMorgan Chase, N.A. ("JPMC"), in the Alternative, for Leave to Appeal (collectively, the "Motions for Leave to Appeal"). By these motions, JPMC and the FDIC seek an immediate appeal from a ruling by the Bankruptcy Court declining to stay two adversary proceedings pending as part of Debtors' chapter 11 bankruptcy proceedings notwithstanding that the Court's ruling was dictated by Third Circuit precedent. There are thus no unsettled questions that justify a departure from the general rule, and strong policy, against interlocutory appeals. In short, the Court's ruling was not a "final order" disposing of the adversary proceedings, and, therefore, the FDIC and JPMC—like all litigants—must await such final disposition to pursue their arguments in a single appeal.

## SUMMARY OF ARGUMENT

As part of Debtors' chapter 11 bankruptcy cases, the Bankruptcy Court is presiding over two adversary proceedings in which Debtors assert numerous claims falling within the Bankruptcy Court's core jurisdiction. JPMC and the FDIC seek leave to appeal the Bankruptcy Court's ruling denying their motions to stay those proceedings, both of which are essential to the resolution of Debtors' estates. As the basis for their proposed appeal, the FDIC and JPMC continue to argue that Debtors' claims against JPMC, by which Debtors seek to recover assets that are not in receivership, are somehow barred by section 11(d)(13)(D) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d)(13)(D). As the Bankruptcy Court recognized following extensive briefing and argument, however, the Third Circuit has firmly and repeatedly rejected such an expansive

1

application of that provision. *See Rosa v. RTC*, 938 F.2d 383 (3d Cir. 1991); *Hudson United Bank v. Chase Manhattan Bank of Connecticut, N.A.*, 43 F.3d 843 (3d Cir. 1994). It is settled that claims asserted against a successor bank pertaining to assets transferred out of receivership, which is the exact nature of Debtors' claims here, are not subject to the FIRREA jurisdictional bar. *See id.* Thus, the Bankruptcy Court's ruling was correct.

There is a strong policy against interlocutory appeals, and the FDIC and JPMC cannot meet the stringent requirements for bringing an appeal as of right. At the most basic level, the Bankruptcy Court's order denying a stay is not appealable as a "final order," under 28 U.S.C. § 158(a)(1), since that order did not dispose of either adversary proceeding. Furthermore, the FDIC and JPMC cannot properly invoke the "collateral order" doctrine, which provides only a "narrow exception" to the general rule against interlocutory appeals. Most significantly, the Bankruptcy Court's order did not resolve an "important issue," *i.e.*, an issue not settled by precedent. Quite the contrary, the Bankruptcy Court applied the settled law of the Third Circuit in arriving at the straightforward conclusion that the FIRREA jurisdictional bar applies to claims against the receiver of a failed bank, and not to claims against a successor institution concerning assets not in receivership.

Furthermore, the FDIC and JPMC cannot establish, as they must, that the Bankruptcy Court's order will be "effectively unreviewable" if they are not permitted an immediate appeal. There is no reason whatsoever that the FDIC and JPMC cannot pursue their arguments, as litigants are generally required to do, on appeal from a final judgment disposing of one or both adversary proceedings. Courts have routinely held that interlocutory appeal is unavailable from denial of a stay motion, and no different rule should apply here. The main justification that JPMC and the FDIC offer for not adhering to the same standard as applies to other litigants is

2

that, absent an immediate appeal, the FDIC will be made to defend multiple litigations at once. But, Debtors have not asserted any claims against the FDIC in either adversary proceeding, and, in one of those proceedings, the FDIC actually elected to intervene. It is classic bootstrapping, and highly unreasonable, for the FDIC to choose to become party to an action, only to complain that it is being made to devote resources to those very proceedings. In any event, FIRREA does not shield the FDIC from all court actions, and, in fact, the FDIC is frequently made to litigate matters outside of the FIRREA claims process.

The FDIC and JPMC, perhaps recognizing that they have no sound basis to appeal as of right, also request that the Court grant leave to appeal. Leave is only available, however, where the appeal would involve a legal issue as to which there is a substantial ground for a difference of opinion. As discussed, the dispositive issue here, far from being subject to significant uncertainty, is settled in the Third Circuit. Simply stated, FIRREA does not bar claims against a successor bank concerning assets not in receivership. Leave is unavailable for the added reason that it would not promote efficiency to shut down both adversary proceedings, as the FDIC and JPMC propose to do, for the sake of permitting a piecemeal appeal. Rather, efficiency is best served by permitting the Bankruptcy Court to fulfill its fundamental obligation to determine and dispose of the assets of the estates so that Debtors can formulate an appropriate plan for the benefit of the estate creditors.

## BACKGROUND

### A.     The DC Action

On September 25, 2008, the Director of the Office of Thrift Supervision (the "OTS") placed WMB into receivership and appointed the FDIC as receiver. On the same day, the FDIC sold substantially all of WMB's assets, including the stock of its subsidiary, Washington Mutual Bank fsb ("WMB fsb"), to JPMC for $1.88 billion (the "P&A Transaction"), pursuant to the

3

Purchase and Assumption Agreement Whole Bank, dated September 25, 2008 (the "P&A Agreement"). As required by section 11(d) of FIRREA, 12 U.S.C. § 1821(d), the FDIC set December 30, 2008, as the last day to file claims against WMB. Debtors, in order to preserve their rights, timely filed proofs of claim.

On January 23, 2009, the FDIC disallowed Debtors' claims in a one-page Notice of Disallowance, partly on the basis that Debtors "appear to assert claims against a third party." (JPMC App. A71, "Notice of Disallowance.")[2] The FDIC further advised that Debtors had 60 days in which to challenge that disallowance by filing a lawsuit either "in the United States District [] Court for the District within which [WMB's] principal place of business was located or the United States District Court for the District of Columbia."[3] (*Id.*) The Notice of Disallowance also cautioned that, if Debtors did not file suit, their claims would be "FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM." (*Id.*) In order to avoid forfeiting their rights, Debtors filed a Complaint in the United States District Court for the District of Columbia (the "DC Action"), on March 20, 2009, challenging the FDIC's disallowance of claims. (JPMC App. A72-A110, "DC

---

[2]   Debtors respectfully request that the Court take judicial notice of the contents of the documents contained in the attached Appendix in Support of Debtors' Memorandum of Points and Authorities in Opposition to the Motions of JPMorgan Chase Bank, N.A. and the Federal Deposit Insurance Corporation for Leave to Appeal (the "Appendix"), consisting of pleadings and related documents filed in the DC Action and the Adversary Proceedings. References to Debtors' Appendix will be referred to as "B_." References to JPMC's Appendix in Support of its Motion will be referred to as "JPMC App."

[3]   Once a creditor files a claim with the agency, the FDIC has 180 days to either allow or disallow it. 12 U.S.C. § 1821(d)(5)(A)(i). A claimant who is dissatisfied with the agency's determination then has 60 days either to request administrative review or to file suit on the claim. 12 U.S.C. § 1821(d)(6)(A). As reflected in the Notice of Disallowance, the claimant is authorized to bring suit either in "the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia." *Id.*

Complaint.") There has been relatively little activity in the DC Action. On June 11, 2009, the FDIC filed an Answer and Counterclaims, along with a partial motion to dismiss, and, on July 13, 2009, it filed an amended Answer and Counterclaims.[4] (B214-B248, "FDIC Am. Countercl.") The FDIC's motion to dismiss is pending, and Debtors are due to respond to the amended Answer and Counterclaims on July 27, 2009.

### B.    The Bankruptcy Proceedings

On September 26, 2008, Debtors each commenced a voluntary case pursuant to chapter 11 of title 11 of the Bankruptcy Code. On March 30, 2009, the FDIC and JPMC each filed proofs of claim in the bankruptcy proceedings. There are two adversary proceedings now pending.

### 1.    The JPMC Adversary Proceeding

On March 24, 2009, JPMC filed an action against Debtors, with the FDIC named as an interpleader defendant in a single count, asserting claims to assorted assets that JPMC allegedly purchased pursuant to the P&A Agreement. *JPMorgan Chase Bank, N.A. v. Washington Mutual,*

---

[4] There are also two pending motions to intervene in the DC Action, one by JPMC and one by a group of bank bondholders. Debtors have opposed both on grounds that the DC Action was brought pursuant to the FIRREA claims process, which authorizes claims only between a claimant in the FDIC claims process and the FDIC. The FDIC agreed with this reasoning in its opposition to the bondholders' motion to intervene, but inexplicably ignored this analysis in a two page submission it filed in support of JPMC's intervention. (B252-B278, "FDIC Opp. to Bondholders"; B249-B251, "FDIC Sup. of JPMC.") More recently, in its amended answer and counterclaims, the FDIC sought to moot Debtors' opposition to JPMC's intervention by adding JPMC as a defendant. All of the FDIC's Counterclaims, however, involve assets that Debtors are seeking to recover for the benefit of the estates. The FDIC's filing is therefore void as a violation of the automatic stay, and is also precluded by the Bankruptcy Court's holding that it has "exclusive jurisdiction" to "decide what is property of the estate." (B1-B118, Transcript of June 24, 209 Omnibus Hearing "Tr. 6/24/09," at 95.) Debtors are therefore preparing a motion, which they will file in the DC Action, seeking to dismiss the FDIC's counterclaims and to stay the remainder of the proceedings.

*Inc. et al.*, Adv. Proc. No. 09-50551 (MFW) (JPMC App. A111-A177, the "JPMC Adversary Proceeding."). On May 22, 2009, Debtors filed an Answer and Counterclaims asserting, among other things, affirmative claims under the Bankruptcy Code's avoidance powers and under state law for the avoidance of potentially more than $10 billion in Debtors' assets fraudulently or preferentially transferred to JPMC prior to the commencement of the Debtors' chapter 11 cases (JPMC App. A260-A393, the "Counterclaims."). JPMC responded with a motion to dismiss, which is now pending in the Bankruptcy Court, in which JPMC relies on the identical argument under FIRREA that the District Court rejected when it denied JPMC's separate motion to stay, discussed *infra*. (*See* JPMC Adversary Proceeding, Docket Nos. 42, 64.)

### 2.    The Turnover Action

On April 27, 2009, Debtors filed an action against JPMC, pursuant to the turnover provision of the Bankruptcy Code, 11 U.S.C. § 542, in which Debtors seek to recover approximately $4 billion in deposits belonging to Debtors (the "Deposits"), which JPMC holds in a series of accounts as successor to WMB and WMB fsb (the "Accounts"). *Washington Mutual, Inc. et al.* v. *JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934 (MFW) (JPMC App. A178-A198, the "Turnover Action," and with the JPMC Adversary Proceeding, the "Adversary Proceedings"). JPMC filed a Motion to Dismiss the Turnover Action on May 13, 2009, arguing that there is a genuine dispute as to ownership of the deposits and that turnover is therefore unavailable. The Court denied that motion at a hearing on June 24, 2009 (the "June 24 Hearing"), finding that Debtors' complaint and accompanying exhibits describe a mature debt owed by JPMC to Debtors, without any indication of a genuine dispute as to "the title to the . . . deposit accounts." (B117, Tr. 6/24/09 at 117.) Now pending before the Bankruptcy Court is Debtors' motion for summary judgment, which is supported by an extensive evidentiary

submission establishing that the Deposits belong to Debtors and that they are entitled to the prompt return of their funds.  (B163-B191, "Debtors' Motion for Sum. Judg.")

### C.   The Bankruptcy Court's Ruling Denying Motions by the FDIC and JPMC to Stay the Adversary Proceedings

On June 1, 2009, the FDIC and JPMC each filed motions with the Bankruptcy Court claiming that it lacks jurisdiction to resolve the Adversary Proceedings (the "Stay Motions"). The FDIC filed a motion to intervene in the Turnover Action for the limited purpose of seeking a stay of those proceedings, and it separately filed a motion to stay the JPMC Adversary Proceeding.  JPMC filed a motion to stay the Turnover Action, in which it incorporated the FDIC's motions and supporting briefs by reference.  In the Stay Motions, the FDIC and JPMC argued that Debtors' claims and counterclaims against JPMC, which concern assets that are not currently in receivership, are barred by FIRREA, 12 U.S.C. § 1821(d)(13)(D).  Debtors and the creditors' committee both opposed the Stay Motions. (B119-B157, "Debtors' Opp. to Motions to Stay"; B158-B162, "Creditors' Committee Opp. to Motions to Stay.")

According to its express terms, section 1821(d)(13)(D) provides as follows:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over –
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to an act or omission of such institution or the Corporation as receiver.

JPMC and the FDIC argued before the Bankruptcy Court, and again here, that Debtors' claims are directed to "the assets of WMB," and are therefore barred as claims to the assets of a "depository institution for which [the FDIC] has been appointed receiver."  (*See, e.g.*, FDIC

Brief at 18.)  At the same time that they advanced this argument, however, both the FDIC and

JPMC acknowledged that the assets at issue in the Adversary Proceedings are not actually part of

the WMB receivership but were sold to JPMC pursuant to the P&A Agreement.  (JPMC Brief at

10; FDIC Brief at 5-6.)  Debtors therefore opposed the Stay Motions for the simple reason that

Debtors' claims are against JPMC, and not against the receiver or assets in receivership.

After extensive briefing and argument, including by the FDIC, JPMC, Debtors, and the

creditors' committee, the Bankruptcy Court denied the Stay Motions at the June 24 Hearing.[5]

Relying on the Third Circuit's decisions in *Rosa* and *Hudson*, the Court held that the

jurisdictional bar under FIRREA applies only to claims against the FDIC for assets in

receivership, and that the bar does not apply, therefore, "to Debtors' claims to property that is no

longer in the hands of the FDIC as receiver, but [is] in the hands of JPMC."  (B93, Tr. 6/24/09 at

93.)  The Court also rejected arguments by the FDIC and JPMC invoking the "first filed rule" as

an alternative basis to defer to the DC Action, reasoning that the Court has "exclusive

jurisdiction to decide what is property of the estate" and observing that the DC Action and the

Adversary Proceedings involve different parties and different claims.  (B94-B95, Tr. 6/24/09 at

94-95.)  Also on June 24, 2009, the Court issued a written opinion authorizing Debtors to

proceed with Rule 2004 discovery.

On July 10, 2009, the FDIC and JPMC filed their Motions for Leave to Appeal, in which

they continue to argue that FIRREA bars Debtors' claims against JPMC, despite the fact that

---

[5]     The Court also granted the FDIC's motion to intervene in the Turnover Act, "for the sole
purpose of prosecuting the action for a stay."  (B34-B35, Tr. 6/24/09 at 34-35.)  In its
subsequent written order denying the Stay Motion in the Turnover Action, the Court
specified that its ruling had "disposed of all matters for which the intervention of the
[FDIC] was granted," and that "no further pleading or response shall be required of the
[FDIC] in this Adversary Proceeding."  (B192-B194, "Order Denying Motions to Stay.")

those claims are not asserted against the FDIC and do not involve assets in receivership.[6] As set forth below, the Bankruptcy Court's denial of the Stay Motions is not a "final" appealable order, and this is not that rare situation in which interlocutory appeal is warranted. The Bankruptcy Court's decision to deny the Stay Motions was dictated by clear and settled precedent, as well as by the language and structure of FIRREA. There is no reason, in any event, that the FDIC and JPMC cannot pursue their position on appeal, in the manner that all parties are expected to, upon final disposition of the Adversary Proceedings. To permit an appeal now would serve only to delay those actions and thereby stall Debtors in their efforts to recover estate assets and to formulate a distribution plan for the benefit of the estates' creditors.

## ARGUMENT

## I.    JPMC AND THE FDIC ARE NOT ENTITLED TO APPEAL AS OF RIGHT

Debtors' claims in the Adversary Proceedings arise under the Bankruptcy Code, and are expressly enumerated, by statute, as core bankruptcy proceedings. Indeed, Debtors have asserted multiple avoidance claims, turnover claims, and disallowance claims. *See* 28 USC §§ 157(b)(2)(A)–(O) ("Core proceedings include, but are not limited to - . . . (B) allowance or disallowance of claims against the estate or exemptions from property of the estate . . . (E) orders

---

[6]    At the same time that they seek to appeal the Bankruptcy Court's ruling before this Court, JPMC and the FDIC have simply ignored that ruling elsewhere. For example, even after the Bankruptcy Court asserted "exclusive jurisdiction" to decide "what is property of the estate," the FDIC filed a series of counterclaims in the DC Action asking the District Court to decide ownership of the very assets at issue in the Adversary Proceedings. (B214-B248.) Similarly, rather than withdraw its motion to dismiss Debtors' counterclaims in the JPMC Adversary Proceeding, JPMC filed a reply brief in support of that motion in which it relied on the identical jurisdictional argument that the Bankruptcy Court had already rejected. (JPMC Adversary Proceeding, Docket Nos. 64, 80.) Also, JPMC filed a motion to withdraw the reference literally on the eve of the June 24 hearing, which the FDIC supported, and, in their recently submitted reply briefs, JPMC and the FDIC both argue, yet again, that the jurisdictional bar under FIRREA applies. (JPMC Adversary Proceeding, Docket Nos. 51, 82, 85.)

to turn over property of the estate . . . (F) proceedings to determine, avoid, or recover preferences . . . and (H) proceedings to determine, avoid, or recover fraudulent conveyances . . .").  In their Stay Motions, JPMC and the FDIC argued that FIRREA nevertheless strips the Bankruptcy Court of its core jurisdiction and that the Adversary Proceedings should therefore be shut down. The Bankruptcy Court was right to retain its jurisdiction and to move forward with the work of resolving Debtors' estates, and JPMC and the FDIC cannot identify any proper basis for appealing that ruling while both Adversary Proceedings are still pending.

A.   **The Bankruptcy Court's Denial of the Stay Motions is not an Appealable Final Order**

JPMC and the FDIC each claim that the Bankruptcy Court's denial of the Stay Motions is appealable as a "final order," pursuant to 28 U.S.C. § 158(a)(1).  (FDIC Brief at 10; JPMC Brief at 18, n.9.)  It is well-settled, however, that a final order is generally one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 497 (1989).  Moreover, while "finality" is viewed somewhat flexibly in bankruptcy proceedings, the same standard applies in individual adversary proceedings as in civil litigation—*i.e.*, an order is final and appealable only if it disposes of the action in its entirety.  *See In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008) ("[A]n order in an individual adversary proceeding is not final unless it 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" (quoting *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir. 1996))); *see also United States v. Nicolet, Inc.*, 857 F.2d 202, 206-07 (3d Cir. 1988) ("Thus, even in bankruptcy appeals the concept of finality is not open-ended.  Orders that do not fully adjudicate a specific adversary proceeding or that require further factual development are governed by the ordinary finality precepts of routine civil litigation."); *Prosser v. Prosser*, No. 2009-09, 2009 WL 798842, *2 (D.V.I. March 23, 2009) (holding that the

10

bankruptcy court's denial of a motion to stay a turnover action was not a final order subject to appeal).

Courts have repeatedly held that the denial of a stay motion, the same ruling at issue here, does not qualify as a final order under these standards. *See, e.g., Prosser*, 2009 WL 798842, at *2 ("[T]he United States Court of Appeals for the Third Circuit has explained that an order denying a motion to stay civil litigation is not final and appealable because '[r]ather than producing a final order which ends the litigation on the merits, the denial of a stay ensures that the litigation will proceed'" (quoting *Nicolet, Inc.*, 857 F.2d at 203)); *In re Trimble*, No. 07-2115, 2008 WL 782581, *3 (Bankr. D.N.J. March 18, 2008) ("Likewise, the denial of the motion to stay is interlocutory."); *see also In re After Six, Inc.*, No. 9304361, 1994 WL 125219, *3 (E.D. Pa. April 12, 1994) ("Judge Scholl's [order] resolved only a preliminary matter in this case: whether or not the proceedings should be stayed . . . . Accordingly, we find that in denying the Zion Corporation's motion to stay, Judge Scholl entered an interlocutory order from which an appeal could only have been taken to this court upon leave having been granted to do so."). These courts have reasoned that the denial of a stay motion does not end a case; to the contrary, such a ruling "ensures that the litigation will proceed" towards final resolution (at which time appeal in the ordinary course becomes available). *Nicolet, Inc.*, 857 F.2d at 203. Accordingly, the Bankruptcy Court's ruling denying the Stay Motions was not a "final ruling" under section 158(a)(1), and JPMC and the FDIC cannot rely on that provision as a basis for appeal.[7] *Id.*

---

[7]    JPMC seemingly recognizes the weakness of its position, and relegates its argument that the Bankruptcy Court's ruling was a final order under section 158(a)(1) to a footnote. (JPMC Brief at 18, n.9.) JPMC also uses a "*but see*" cite to acknowledge the Third Circuit's decision in *In re Natale*, 295 F.3d 375 (3d Cir. 2002). That decision, like the *Truong* decision cited in text, stands for the proposition that the "finality" requirement is the same in a bankruptcy adversary proceeding as it is in civil litigation generally. 295
(footnote continued)

11

**B.      The Bankruptcy Court's Ruling is not Appealable Under the Collateral Order Doctrine**

The FDIC and JPMC both invoke the collateral order doctrine as a supposed basis for appeal as of right. (FDIC Brief at 10; JPMC Brief at 18.) The Supreme Court has emphasized the strong policy disfavoring piecemeal litigation, however, and the collateral order doctrine therefore serves as only a "narrow exception" to the general rule against interlocutory appeals. *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) ("[W]e have . . . repeatedly stressed that the 'narrow' exception should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated.") (citation omitted); *In re Carco Electronics*, 536 F.3d 211, 213-14 (3d Cir. 2008) ("The Supreme Court's decision in *Digital Equipment* cautions that the collateral order doctrine is 'narrow' and that claims for its applicability should be subjected to 'broad scrutiny.'"); *see also We, Inc. v. City of Philadelphia*, 174 F.3d 322, 324-25 (3d Cir. 1999) (emphasizing that the collateral order doctrine is to be construed narrowly). For an order to be subject to appeal as a collateral order, it must: (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and

---

F.3d at 380. Thus, the denial of a stay in an adversary proceeding, since it does not dispose of the action outright, is not a final order subject to appeal as of right. *Truong*, 513 F.3d at 94. While JPMC buries its argument in a footnote, the FDIC seeks to conflate section 158(a)(1) with the "collateral order" doctrine. (FDIC Brief at 10.) Although the FDIC avoids acknowledging the point, the collateral order doctrine is actually a "narrow exception" to the general rule that appeal is only proper from a final order. *See In re Hastings*, No. 08-5353, 2009 WL 564240, *3 (D.N.J. March 5, 2009) ("Even an order that is not final under § 158(a) may be appealable under the collateral order doctrine established in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). The Third Circuit has applied *Cohen* to provide a narrow exception to the general rule permitting appellate review only of final orders."). As discussed *infra*, that narrow exception does not apply here.

12

(3) be "effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). Furthermore, "[i]f the order at issue fails to satisfy any one of these requirements, it is not appealable under the collateral-order exception[.]" *Gulfstream Aerospace Corp. v. Maycamas Corp.*, 485 U.S. 271, 276 (1988).[8]

As set forth below, the FDIC and JPMC cannot meet their burden. It is settled that the FIRREA jurisdictional bar does not apply to claims against a third party successor bank (and the issue therefore does not qualify as "important"), and there is no reason that the FDIC and JPMC cannot pursue their arguments, in the ordinary course, through an appeal upon final disposition of the Adversary Proceedings.

---

[8]    Accepting *arguendo* that JPMC and the FDIC are correct that the Bankruptcy Court's ruling that it has "exclusive jurisdiction to decide what is property of the estate" was conclusive (B94, Tr. 6/24/09 at 94), that ruling is plainly entitled to preclusive effect. *See Warnick v. NMC-Wollard, Inc.*, 512 F. Supp. 2d 318, 323 (W.D. Pa. 2007) ("[T]he concept of finality for purposes of 'collateral estoppel does not require the entry of a judgment final in the sense of being appealable'; instead, 'the doctrine of collateral estoppel applies whenever an action is sufficiently firm to be accorded conclusive effect.'") (quoting *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991) (internal quotation marks omitted)); *Dyndul v. Dyndul*, 620 F.2d 409, 412 (3d Cir. 1980) ("(F)inal judgment (with respect to issue preclusion) includes any prior adjudication of an issue in another action between the parties that is determined to be sufficiently firm to be accorded conclusive effect.") (internal quotation marks and citations omitted); *see also* 18 JAMES WM. MOORE ET. AL., MOORE'S FEDERAL PRACTICE, § 132.03 (3d ed. 1999) ("Issue preclusion . . . does not require a judgment that ends the litigation and leaves nothing for the court to do but execute the judgment. Rather, the concept of finality for issue preclusion purposes includes many dispositions that, though not final in that sense, have nevertheless been fully litigated."). Nevertheless, in blatant contradiction of its position here—*i.e.*, that the Bankruptcy Court's ruling was conclusive—the FDIC recently filed a series of counterclaims in the DC Action asking the Court there to determine the ownership of the very assets over which the Bankruptcy Court has asserted exclusive jurisdiction. (B214-B248.) Those Counterclaims are plainly precluded by the Bankruptcy Court's Orders, and Debtors will be moving separately in the DC Action that the Counterclaims be dismissed. *See Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 572 (3d Cir. 2002) ("[I]ssue preclusion prevents relitigation of the same issues in a later case.").

1.    **There is no "Important" Issue Warranting a Departure from the General Rule Against Interlocutory Appeal**

An "important" issue under the collateral order doctrine is one that is "serious and unsettled." *In re Ford Motor Co.*, 110 F.3d 954, 961 (3d Cir. 1997); *see also Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982); *Nemours Found. v. Manganaro Corp.*, 878 F.2d 98, 100 (3d Cir. 1989) ("[T]he type of 'important issue[s]' that the 'completely separate from the merits' requirement encompasses are those that are important in a jurisprudential sense."). JPMC and the FDIC purport to satisfy this standard on the basis that the Bankruptcy Court's decision, in which it held that the FIRREA jurisdictional bar does not apply to claims against a successor bank, is "unprecedented" (FDIC Brief at 11) and that there is "[n]o reported decision" that supports such a result (JPMC Brief at 21). In fact, the Bankruptcy Court's decision was dictated by two reported decisions by the Third Circuit, *Rosa* and *Hudson*.

The Court in *Rosa*, like the Bankruptcy Court here, held that section 1821(d)(13)(D) does not bar an action against a successor bank concerning assets that it obtained out of receivership pursuant to a P&A Agreement. *Rosa v. RTC*, 938 F.2d 383 (3d Cir. 1991). In *Rosa*, plaintiffs were participants in the pension plan of a failed bank, City Federal Savings Bank ("City Federal"), that was placed into receivership with the Resolution Trust Corporation (the "RTC"). *Id.* at 388. After the OTS placed City Federal into receivership, certain of its assets and liabilities were transferred to City Savings Bank, F.S.B. ("City Savings Bank") pursuant to a purchase and assumption agreement between City Savings Bank and the RTC as receiver for City Federal. *Id.* Subsequently, City Savings Bank too was closed, with the RTC being appointed receiver, and certain of its assets and liabilities were transferred to a new bank, City Savings F.S.B. ("City Savings"), pursuant to a second purchase and assumption agreement between City Savings and the RTC as receiver for City Savings Bank. *Id.* at 390. Significantly,

14

the Court found that plaintiffs' claims seeking plan contributions were subject to FIRREA's

jurisdictional bar as asserted against City Federal and City Savings Bank, because those entities

were "depository institutions for which the RTC had been appointed receiver," but not as to City

Savings, because City Savings, like JPMC here, was not a depository institution for which the

RTC had been appointed receiver. *Id.*

Thus, under *Rosa*, it is settled in the Third Circuit that the jurisdictional bar under

FIRREA does not apply to claims asserted against a successor bank (such as JPMC) that, as of

the filing of the complaint, is not in receivership. *Id.* at 393 ("The language of the bar simply

states that it applies when there is an institution for with RTC 'has been' appointed receiver.

Thus the issue at bar is whether, at the time the case came before the district court, RTC had

been appointed receiver of the institutions . . . . At the time the complaint was filed, [the

successor bank] was in conservatorship, not receivership. Thus, [the successor bank] was not

then a depository institution "for which the Corporation has been appointed receiver."). In

reaching this result, the *Rosa* Court addressed both prongs of section 1821(d)(13)(D):

> We do not believe [claims against the successor bank] fall under [§
> 1821(d)(13)(D)(i)] because they seek neither payment from nor a determination of
> rights with respect to the assets of a depository institution for which RTC has
> been appointed receiver . . . . Nor does [§ 1821(d)(13)(D)(ii)] bar these claims.
> This is so because we construe the 'relating' language of that clause to refer to
> claims against the very institution whose acts are challenged, which must be an
> institution for which RTC has been appointed receiver.

*Id.* at 394. Thus, when it denied the Stay Motions, the Bankruptcy Court faithfully adhered to

the Third Circuit's clear holding in *Rosa* that the jurisdictional bar under FIRREA applies only to

claims "against a receiver or an institution in receivership." (B93-B94, Tr. 6/24/09 at 93-94.)[9]

---

[9]     Both the FDIC and JPMC strain to distinguish *Rosa*, but neither can identify any coherent
        basis for doing so. The FDIC offers a lengthy factual summary of the decision, and
        concludes that "the Third Circuit expressly rejected the plaintiffs' argument, also adopted
(footnote continued)

The Third Circuit reaffirmed *Rosa's* holding in its subsequent decision in *Hudson United Bank v. Chase Manhattan Bank of Connecticut, N.A.*, 43 F.3d 843 (3d Cir. 1994). The *Hudson* Court repeatedly invoked *Rosa* for the specific proposition that the jurisdictional bar under section 1821(d)(13)(D)(i) "applied only to claims against failed institutions while [section 1821(d)(13)(D)(ii)] applied to claims against the failed institutions specified in (i) as well as to claims against the receiver of such institutions." *Id.* at 847 n.10; *see also id.* at 852 ("[*Rosa*] held that claims against the receiver, as well as claims against the failed institution, were subject to the 'statutory exhaustion requirement' of administrative review"). Recognizing that Debtors' claims against a successor bank plainly cannot be barred under this formulation, JPMC and the FDIC are reduced to arguing that the Third Circuit misspoke. The FDIC actually asks that this Court disregard *Hudson* on the basis that the Third Circuit, in "paraphras[ing]" its earlier holding in *Rosa*, mistakenly used the word "against" rather than "concerning." (FDIC Brief at 18, n.8.) There was no mistake—the Court in *Rosa* was clear that the FIRREA jurisdictional bar applies to claims "*against* the very institution whose acts are challenged, which must be an institution for

---

by Debtors' here, that the bar only applied to 'claims against a 'failed institution.'" (FDIC Brief at 17.) This is pure misdirection. The FDIC appears to be referring to a portion of the decision in which the Court in *Rosa* rejected the view that the FIRREA jurisdictional bar applies only to claims against the failed depository institution arising prior to receivership. That has nothing whatsoever to do with Debtors' position here, and the FDIC does nothing to distinguish the specific holding in *Rosa*, described in text, that the jurisdictional bar under FIRREA applies only to claims either against the failed institution or against the receiver. For its part, JPMC contends that "the issue in *Rosa* was whether FIRREA's jurisdictional bar reached claims that did not arise from acts of the receiver, did not arise from acts of a failed depository institution in receivership and did not arise from the underlying purchase and assumption agreement." (JPMC Brief at 30.) It is impossible to understand JPMC's basis for this statement. The plaintiffs in *Rosa* asserted claims against a successor bank under a pension plan that allegedly passed out of receivership pursuant to a P&A Agreement, just as Debtors here are asserting claims against JPMC pertaining to assets that passed out of receivership pursuant to a P&A Agreement.

which RTC has been appointed receiver." *Rosa*, 938 F.2d at 394 (emphasis added).

Furthermore, the *Hudson* Court did not simply reaffirm that holding just once in a loosely stated

paraphrase. Rather, the Third Circuit in *Hudson* emphasized twice that *Rosa* stands for the

proposition that the jurisdictional bar under section 1821(d)(13)(D) applies only to claims against

the failed institution or the receivership. *See Hudson*, 43 F.3d at 847 n.10, 852.

While the FDIC and JPMC both now seek to escape the holdings in *Rosa* and *Hudson*,

they conveniently ignore that the FDIC itself previously analyzed FIRREA exactly as the Third

Circuit did in both of those decisions (and as the Bankruptcy Court did here). The FDIC

explained its former position in a brief opposing *certiorari* in the Ninth Circuit decision in

*Henrichs v. Valley View Dev.*,

> the jurisdictional bars in FIRREA do not apply to suits . . . that are brought
> not against the FDIC, but against an assignee of an asset formerly held by
> the FDIC. . . . As the Court of Appeals correctly concluded, Section
> 1821(d)(13)(D) applies only in an action against the FDIC. It does not
> apply in an action . . . against a private party who owns an asset that was
> formerly held by an FDIC receivership . . . . Once the receivership has
> transferred an asset to a third party, the asset is no longer an 'asset of the
> depository institution for which the corporation has been appointed
> receiver' . . . . Accordingly, the court of appeals correctly held that
> Section 1821(d)(13)(D)'s jurisdictional bar does not apply to 'assignees of
> assets once owned by the FDIC.'

*FDIC Opp'n to pet. for Writ of Cert. in Henrichs v. Valley View Dev.*, 474 F.3d 609, 614 (9th

Cir.), *cert. denied*, 128 S. Ct. 647 (2007) (B195-B213, "*Henrichs* Brief.")[10] The FDIC was right;

---

[10]  The FDIC also observed in its *Henrichs* Brief that section 1821(d)(13)(D), by its express
terms, applies not only to claims concerning assets currently in receivership, but also to
claims concerning assets that, "although no longer owned by the receivership, are still
owned by the FDIC in its corporate capacity." (B208, *Henrichs* Brief at 9.) As the FDIC
explained, "[i]f section 1821(d)(13)(D) generally applied to assets that the receivership
has assigned to others, there would have been no need to specify that the assets assigned
to the FDIC in its corporate capacity are also covered." (*Id.*) The Bankruptcy Court
made the same observation when it noted that "the last clause of [section
1821(d)(13)(D)(i)]" would be rendered "superfluous" if the jurisdictional bar under
(footnote continued)

the FIRREA jurisdictional bar does not apply to claims against successor banks. Thus, applying *Rosa* and *Hudson*, and consistent with the FDIC's own former position in *Henrichs*, the Bankruptcy Court was correct when it ruled that Debtors' claims against JPMC are not barred under FIRREA.[11]

Without any convincing basis for avoiding the holding in *Rosa* as reaffirmed by *Hudson*, the FDIC and JPMC ask this Court to simply disregard Third Circuit precedent and rely instead on the Sixth Circuit's decision in *Vill. of Oakwood v. State Bank & Trust Co.*, 39 F.3d 373 (6th Cir. 2008). (JPMC Brief at 27.) Even if *Oakwood* could somehow override the law of this circuit—and plainly it cannot—the holding in that case is fully consistent with the Bankruptcy Court's ruling. The plaintiffs in *Oakwood*, unlike Debtors here, "failed to comply with the administrative claims process" under FIRREA. *Id.* at 386. In an effort to avoid forfeiting their claims, plaintiffs named a successor bank as defendant in an action that was actually based on an alleged breach of duty by the receiver in connection with uninsured deposits that were never transferred out of receivership. *Id.* at 376; *see also Vill. of Oakwood v. State Bank & Trust Co.*, 519 F. Supp. 2d 730, 739 (N.D. Ohio 2007) ("Through this agreement, the FDIC transferred some liabilities to [the successor bank], but [the successor bank] did not assume liability for uninsured deposits or the actions of the FDIC."). Thus, while the plaintiffs in *Oakwood*

---

FIRREA generally applies to assets that are no longer in receivership. (B52, Tr. 6/24/09 at 52.) The FDIC has provided no explanation as to why it no longer agrees with this assessment.

[11]    JPMC and the FDIC invoke the Third Circuit's decision in *Nat'l Union Fire Ins. Co. v. City Sav. F.S.B.*, 28 F.3d 376 (3d Cir. 1994), in which the Court held that a declaratory judgment action against the receiver of a failed bank, concerning insurance policies that were assets in receivership, was governed by FIRREA. That is fully consistent with *Rosa's* holding, and with the decision in *Hudson* (which was rendered subsequent to *National Union*), that the jurisdictional bar under FIRREA applies only to claims either for assets in receivership or against the receiver. The claims in *National Union* met both of those criteria, whereas the claims here meet neither.

ostensibly sued a successor bank, their claim was truly against the receiver and concerned assets that remained in receivership. The FIRREA jurisdictional bar therefore applied. Here, in obvious contrast, the assets at issue are not in receivership—rather, they were passed to JPMC pursuant to the P&A Agreement. Even the FDIC recognizes, for instance, that, unlike the successor bank in *Oakwood*, JPMC assumed "all of WMB's deposit liabilities." (FDIC Brief at 6.) Thus, Debtors' claims are in fact against a successor bank, and, as in *Rosa*, the jurisdictional bar does not apply.

The FDIC's and JPMC's own cited authority confirms that interlocutory appeal, a rare and narrow exception to the general rule against piecemeal litigation, is appropriate only where there is a significant issue that is genuinely unsettled in the Third Circuit. Both JPMC and the FDIC rely on *Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49 (3d Cir. 1991), in which the Court held that interlocutory appeal was appropriate in order to resolve an issue as to which the district courts, including within the Third Circuit, were "sharply divided." *Id.* at 51. Specifically, the question in *Praxis* was "whether and for how long a federal district court must grant the receiver of an insured depository institution a stay . . . under 12 U.S.C. § 1821(d)(12)(ii)." *Id.* In this case, which involves an entirely different legal question (and FIRREA provision), there is no "sharp div[ision]" within the Third Circuit, or anywhere else. *See Rosa*, 938 F.2d at 394; *Hudson*, 43 F.3d at 852; *Henrichs*, 474 F.3d at 614 (holding that FIRREA does not prevent a state court adjudication of rights to distributed assets of a receivership bank, reasoning that "the statute does not reach assignees of assets once owned by the FDIC"); *FDIC v. McFarland*, 243 F.3d 876, 887 n.42 (5th Cir. 2001) ("The claim procedures articulated in 12 U.S.C. 1821(d)(5)-(11) are predicated on the FDIC's possession of the property in question. When the FDIC relinquishes ownership, the procedures governing its role as a

19

receiver no longer apply to the property."). The Bankruptcy Court's ruling was dictated by the holding in *Rosa* as reaffirmed in *Hudson*; it was in keeping with the FDIC's own stated position in *Henrichs*; and it was consistent with decisions rendered by a number of Circuit Courts around the country. It is settled, and not a matter for interlocutory appeal, that the FIRREA jurisdictional bar does not apply to claims against a successor bank concerning assets not in receivership.

### 2.    The Bankruptcy Court's Decision is Reviewable upon Final Judgment

The collateral order doctrine does not apply for the added reason that the Bankruptcy Court's denial of the Stay Motions is reviewable upon final judgment in the Adversary Proceedings. In addressing this requirement, the Supreme Court has held repeatedly that an order is "effectively unreviewable" only "where the order at issue involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 499 (1989) (citing *Midland Asphalt Corp. v. U.S.*, 489 U.S. 794, 799 (1989)). JPMC argues that it meets this stringent requirement on the basis that a denial of a stay, by its very nature, cannot be effectively reviewed upon final judgment since "[t]he issue is whether those proceedings should even occur." (JPMC Brief at 23.) But that proves far too much. If JPMC were correct, then every denial of a stay motion and every denial of a motion to dismiss would be subject to immediate appeal. *See Robinson v. Hartzell Propeller, Inc.*, 454 F.3d 163, 168 (3d Cir. 2006) ("[S]imply characterizing a right as an irreparable entitlement not to stand trial is insufficient for an appeal to fall under the collateral order doctrine, as 'virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring 'a right not to stand trial.'" (*quoting Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 873 (1994))). The reality is far different—courts routinely deny appeal from such rulings. *See, e.g., Gulfstream Aerospace Corp. v. Mayacamas*

20

*Corp.*, 485 U.S. 271 (1988) (holding that collateral order doctrine did not authorize appeal from

an order denying a motion to stay or dismiss an action on *Colorado River* abstention grounds);

*Prosser v. Prosser*, No. 2009-09, 2009 WL 798842, *2 (D.V.I. March 23, 2009) (denying

immediate appeal from a bankruptcy court order denying emergency motion to stay trial in a

turnover action); *In re Trimble*, No. 07-2115, 2008 WL 782581, *3 (Bankr. D.N.J. March 18,

2008) (holding that collateral order doctrine did not authorize appeal from denial of a motion to

stay pending arbitration); *In re Norvergence, Inc.*, No. 08-1910, 2008 WL 5136706, *3 (D.N.J.

Dec. 5, 2008) ("An order denying a motion to dismiss generally is not immediately

appealable.").

In *Lauro Lines*, the defendant, a cruise ship operator, sought immediate appeal under the

collateral order doctrine from an order denying its motion to dismiss a damages action in federal

district court in New York on the basis of a forum selection clause between the parties that

required that all claims be brought in Italy.  The Court held that immediate appeal was properly

denied,

> If it is eventually decided that the District Court erred in allowing trial in
> this case to take place in New York, petitioner will have been put to
> unnecessary trouble and expense, and the value of its contractual right to
> an Italian forum will have been diminished.  It is always true, however,
> that "there is value ... in triumphing before trial, rather than after it,"
> *MacDonald, supra*, at 860, n. 7, 98 S.Ct., at 1553, n. 7, and this Court has
> declined to find the costs associated with unnecessary litigation to be
> enough to warrant allowing the immediate appeal of a pretrial order, *see
> Richardson-Merrell Inc., supra*, 472 U.S., at 436, 105 S.Ct., at 2764
> ("[T]he possibility that a ruling may be erroneous and may impose
> additional litigation expense is not sufficient to set aside the finality
> requirement imposed by Congress" in § 1291).

*Lauro Lines*, 490 U.S. at 499.  The Court also emphasized that "an entitlement to avoid suit is

different in kind from an entitlement to be sued only in a particular forum."  *Id.* at 500.  Thus,

while recognizing that the defendant might lose the benefit of its forum selection clause by

21

having to defend an action in New York, the Court was satisfied that its claims could be adequately vindicated upon final disposition of the suit. *Id.*

The situation here is governed by *Lauro Lines*. Significantly, there is no claim that the FDIC is not subject to suit anywhere—rather, the FDIC and JPMC argue that FIRREA deprives the Bankruptcy Court of jurisdiction over the Adversary Proceedings to ensure that the FDIC is subject to suit in only one action (*i.e.*, the DC Action), and that interlocutory appeal is therefore necessary to protect the FDIC from the burden of simultaneously participating in multiple litigations. (FDIC Brief at 11; JPMC Brief at 23.) However, the Supreme Court has already "declined to hold the collateral order doctrine applicable where a district court has denied a claim, not that the defendant has a right not to be sued at all, but that the suit against the defendant is not properly before the particular court because it lacks jurisdiction." *Lauro Lines*, 490 U.S. at 499 (citing authority). The Court has also specifically held that the "costs associated with unnecessary litigation," even where a defendant asserts a right "not to be subjected to suit" in a particular jurisdiction, does not justify immediate appeal. *Id.* As in *Lauro Lines*, then, the FDIC and JPMC can pursue their position on appeal from a final disposition, and the collateral order doctrine does not apply.[12] *Id.*; *see also Delta Traffic Serv., Inc. v. Occidental Chem. Corp.*, 846 F.2d 911, 914 (3d Cir. 1988) (holding that denial of defendant's motion for a stay and

---

[12]   JPMC and the FDIC rely on *Praxis*, in which the Third Circuit held that the RTC was entitled to immediate appeal of a district court order refusing to grant a 90-day stay that the RTC argued was mandated by statute. 947 F.2d at 59-60. The Court reasoned that the statutory stay was intended to guarantee the RTC "breathing room" before the commencement of litigation, a benefit "very different" from the avoidance of "unnecessary litigation expenses." *Id.* at 60. Thus, *Praxis* did not involve the right at issue in *Lauro Lines*, *i.e.*, the "right not to be sued in a particular jurisdiction," and appeal was warranted. *Id.* In this case, as in *Lauro Lines*, the FDIC is asserting a right not to be sued in a particular jurisdiction, and the benefit that it seeks is the avoidance of unnecessary litigation expenses. Thus, *Lauro Lines* is plainly controlling and there is no basis for immediate appeal.

transfer to the Interstate Commerce Commission ["ICC"] was "not effectively unreviewable upon appeal from final judgment" and finding that "[s]hould the case be appealed after a final order and this court determine that the district court erred in assessing the nature of the claims and defenses presented, those issues requiring the technical expertise of the ICC may then be remanded to that agency for consideration"); *Queipo v. Prudential Bache Sec., Inc.*, 867 F.2d 721 (1st Cir. 1989) (holding that order denying motion to stay proceedings and compel arbitration was not appealable under collateral order doctrine; potential inconvenience of having to incur expense of court proceedings did not amount to irreparable harm to justify immediate review); *Nicholas v. Wyndham Intern. Inc.*, No. 2001-147, 2005 WL 1025360, *1 (D.V.I. April 28, 2005) ("There is no reason why the denial of Hornby's request for a stay pending the completion of all unrelated criminal proceedings would be precluded from appellate review after a final judgment in this case is entered.").[13]

---

[13]    It is worth noting that the FDIC is often required to litigate claims outside of the FIRREA claims process. *See, e.g., Auction Co. of Am. v. FDIC*, 141 F.3d 1198, 329 (D.C. Cir. 1998) (holding that FIRREA did not bar company's breach of contract claims against the FDIC); *In re Parker N. Am. Corp.*, 24 F.3d 1145, 1154 (9th Cir. 1994) (allowing preference action by the debtor against RTC because the action is "in substance an action to determine whether the RTC actually has an asset rather than an action seeking a determination of rights with respect to the assets of a depository institution") (citations and internal quotation marks omitted); *In re All Season's Kitchen, Inc.*, 145 B.R. 391 (Bankr. D. Vt. 1992) (holding that debtor's complaint attacking the validity of FDIC's lien was properly before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A)); *In re First Republicbank Corp.*, 1990 Bankr. LEXIS 2840 (Bankr. N.D. Tex. June 19, 1990) ("Congress can, but has not provided that Section 548 of the Bankruptcy Code not apply to FDIC bank assistance packages given under Section 13(c) of the Federal Deposit Insurance Act."). Thus, it is simply not true, as JPMC and the FDIC suggest, that FIRREA spares the FDIC of the burden of such litigation in all circumstances. Rather, as discussed *supra*, the jurisdictional bar under FIRREA applies only to those claims asserted either against the receiver or for assets in receivership, *Hudson*, 43 F.3d at 852, and that is not the nature of Debtors' claims here.

The FDIC's complaint that it is being forced to defend multiple litigations at once, in addition to being legally inadequate to justify an immediate appeal, is wrong as a factual matter. Most notably, the FDIC is a party to the Turnover Action because it chose to be. The FDIC filed a motion to intervene in that action for the purpose of pursuing its stay motion, and the Bankruptcy Court granted the FDIC's motion on that limited basis. (B34-B35, Tr. 6/24/09 at 34-35 (granting motion to intervene "for the sole purpose of prosecuting the action for a stay").) Furthermore, when it issued its order denying the Stay Motion in the Turnover Action, the Bankruptcy Court specifically provided that the FDIC, having entered the case solely to seek a stay, would be under no obligation to make any additional court submissions. (B192-B194, Order Denying Motions to Stay.) Thus, the FDIC joined the Turnover Action on its own initiative, it did so for a limited purpose, and it is under no obligation to participate in the proceedings going forward. It is nothing less than absurd for the FDIC to insist on participating as a party in an action in which it is not being sued, only to seek an interlocutory appeal on the basis that its ongoing participation in that action would be unduly burdensome. And it is particularly absurd where the FDIC's participation in that action, by its own request and pursuant to Court order, is extremely limited.[14]

Finally, both JPMC and the FDIC have pursued a scorched earth litigation strategy that puts the lie to any suggestion by those parties that they are somehow showing restraint and acting

---

[14]    The FDIC's involvement in the JPMC Adversary Proceeding is similarly limited. Debtors have not asserted any claims against the FDIC in that action. Rather, JPMC named the FDIC as a nominal defendant, with respect to a single interpleader count. In its recently filed answer and counterclaims in the Turnover Action, JPMC asserted a similar interpleader claim against the FDIC. JPMC and the FDIC are plainly exaggerating the supposed burdens on the FDIC resulting from the Bankruptcy Court's ruling. At the same time that it is complaining about the supposed burden on the FDIC, moreover, JPMC is ignoring that it is the sole party that has actually asserted any claims against the FDIC in either Adversary Proceeding.

to avoid the burden of costly litigation in multiple jurisdictions. Even after the Bankruptcy Court asserted its exclusive jurisdiction to decide "what is property of the estate" (B95, Tr. 6/24/09 at 95), the FDIC filed a series of counterclaims in the DC Action asking the Court in those proceedings to determine ownership of the same assets at issue in the Adversary Proceedings. Thus, far from avoiding litigation addressed to the identical question in multiple proceedings, the FDIC has asserted claims in the DC Action without awaiting resolution of its appeal here challenging the Bankruptcy Court's exclusive jurisdiction over the identical subject matter. Furthermore, even after having filed proofs of claim and an adversary proceeding in the Bankruptcy Court, JPMC filed a motion to intervene in the DC Action seeking to become a party to that proceeding as well. Also, rather than accept that the Bankruptcy Court's ruling stands until and unless it is reversed on appeal, the FDIC and JPMC have continued to advance the same FIRREA argument that the Bankruptcy Court has already rejected in multiple pleadings, including in JPMC's motions to dismiss Debtors' counterclaims in the JPMC Adversary Proceeding and in the motions to withdraw the reference in both Adversary Proceedings.

Against this backdrop, it is clear that the Motions for Leave to Appeal are not aimed at securing prompt review of an unsettled issue for the purpose of sparing the FDIC of an ongoing burden. Rather, those motions are merely one more facet of a kitchen-sink approach by both the FDIC and JPMC designed to stall the efficient resolution of the bankruptcy and the Adversary Proceedings, and to divest the Bankruptcy Court of its traditional jurisdiction to dispose of the assets of Debtors' estates. *See Will v. Hallock*, 546 U.S. 345, 349 (2006) (noting that the requirements for application of the collateral order doctrine are "stringent" in part to further the "sensible policy 'of avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a

25

litigation may give rise.'") (citations omitted); *Digital Equip.*, 511 U.S. at 873 (reasoning that if parties could too easily invoke the collateral order doctrine as a basis for immediate appeal of a non-final order, "any improper purpose the appellant might have had in saddling its opponent with cost and delay would be accomplished"). With the FDIC having elected to participate in the bankruptcy proceedings and to do so in such an aggressive fashion, there is simply no reason that it should be immune from the burdens and risks inherent in any litigation—and that includes the risk of an unfavorable ruling, one that might result in ongoing litigation, that is not immediately subject to appeal. *See Lauro Lines*, 490 U.S. at 499; *see also De Fuertes v. Drexel, Burnham, Lambert, Inc.*, 855 F.2d 10, 12 (1st Cir. 1988) ("True, if plaintiffs are correct that no valid arbitration agreement existed, then the denial of immediate review will have required them to have incurred the expense of arbitration proceedings, but this type of inconvenience resulting "when a sound defense interposed early in a litigation is erroneously rejected" is the price of the final judgment rule and does not constitute irreparable harm." (quoting *Crist v. Miller*, 846 F.2d 1143, 1144 (7th Cir. 1988))).

## II.    JPMC AND THE FDIC ARE NOT ELIGIBLE FOR LEAVE TO APPEAL

In addition to claiming that they are entitled to appeal as of right, JPMC and the FDIC request leave to appeal pursuant to 28 U.S.C. § 158(a)(3). It is settled, however, that a district court should exercise its discretion to certify issues for interlocutory appeal only "sparingly." *Sabree v. Williams*, No. 07-2936, 2008 WL 4534073, *1-2 (D.N.J. Oct. 2, 2008). The FDIC and JPMC must satisfy several requirements to qualify for such extraordinary relief:

> In determining whether this Court should grant leave to file an interlocutory appeal from a decision rendered by the Bankruptcy Court, pursuant to 28 U.S.C. § 158(a), the Court is guided by the analogous criteria set forth in 28 U.S.C. § 1292(b), which governs interlocutory appeals from the district courts to the courts of appeal. *See In Re Magic Restaurants*, 202 B.R. 24, 25 (D. Del. 1996). Leave to file an interlocutory appeal may be granted when the order at issue (1) involves a

26

> controlling question of law upon which there is (2) substantial grounds for
> difference of opinion as to its correctness, and (3) if appealed
> immediately, may materially advance the ultimate termination of the
> litigation. *See Katz v. Carte Blanche Corporation*, 496 F.2d 747, 754 (3d
> Cir. 1974). Any appeal under 28 U.S.C. § 1292(b) represents a deviation
> from the ordinary policy of avoiding 'piecemeal appellate review of trial
> court decisions which do not terminate the litigation.'

*Truong v. Kartzman*, No. 06-3286, 2007 WL 1816048, *2 (D.N.J. June 22, 2007); *see also In re*

*Frascella Enters., Inc.*, 388 B.R. 619, 623 (Bankr. E.D. Pa. 2008). Furthermore, because

interlocutory appeal is a departure from the general policy against piecemeal litigation,

"interlocutory appeal is appropriate only in exceptional circumstances." *Frascella*, 388 B.R. at

623; *see also Truong*, 2007 WL 1816048, at *2 ("Finally, an appellant must establish "that

exceptional circumstances justify a departure from the basic policy of postponing the review

until after the entry of final judgment." (quoting *In Re Magic Rests.*, 202 B.R. 24, 26 (D. Del.

1996))).

A.    **There is no "Substantial Ground for Difference of Opinion" Warranting
      Interlocutory Appeal**

In order to establish a "substantial ground for difference of opinion," as required for leave

to file interlocutory appeal, a movant must demonstrate "genuine doubt as to the correct legal

standard." *Norvergence, Inc. v. Nortel Networks*, No. 08-1882, 2008 WL 5136842, *2 (D.N.J.

Dec. 5, 2008). "[M]ere disagreement" with the Bankruptcy Court's ruling is not sufficient. *Id.*

at *3. The standard for identifying a "substantial ground for difference of opinion" under section

158(a)(3) is comparable to the standard for identifying an "important" question under the

collateral order doctrine. *See Frascella*, 388 B.R. at 626. Thus, for similar reasons as set forth in

Section I.B.1 *supra*, JPMC and the FDIC cannot establish a basis for leave to appeal.

The Bankruptcy Court's decision was squarely dictated by the settled precedent of the

Third Circuit. As discussed, *supra*, the Court in *Rosa* specifically held that the jurisdictional bar

under FIRREA does not apply to claims asserted against a successor bank for assets not currently in receivership. *Rosa*, 938 F.2d at 393 ("the issue at bar is whether, at the time the case came before the district court, RTC had been appointed receiver of the institutions . . . . At the time the complaint was filed, [the successor bank] was in conservatorship, not receivership. Thus, [the successor bank] was not then a depository institution "for which the Corporation has been appointed receiver.") (emphasis added)). Furthermore, the *Hudson* Court reaffirmed this holding, stating repeatedly that the only claims barred under FIRREA are those asserted either against a failed institution or the receivership. 43 F.3d at 852 ("[*Rosa*] held that claims against the receiver, as well as claims against the failed institution, were subject to the 'statutory exhaustion requirement' of administrative review").

In light of this authority, the Bankruptcy Court was surely correct that "FIRREA only bars claims against a receiver or an institution in receivership," and that the bar does not apply, therefore, to Debtors' claims "to property . . . no longer in the hands of the FDIC." (B93, Tr. 6/24/09 at 93.) The FDIC's and JPMC's "mere disagreement" with this ruling—and, apparently, with the decisions in *Rosa* and *Hudson*—is simply not a sufficient basis to overcome the strong policy against interlocutory appeal.

### B.  An Interlocutory Appeal Would Undermine, Rather than Promote, the Efficient Resolution of Debtors' Bankruptcy

In deciding whether interlocutory appeal will promote efficient resolution of a bankruptcy proceeding, "[a] critical factor is whether the interlocutory appeal will cause excessive delay." *In re Norvergence, Inc.*, No. 08-1910, 2008 WL 5136706, *3 (D.N.J. Dec. 5, 2008). That is exactly what an interlocutory appeal would lead to here. Granting JMPC's and the FDIC's Motions for Leave to Appeal would do nothing more than delay the administration of

the estates and stall Debtors in their efforts to recover the funds necessary to pay the estates' numerous creditors.

It is impossible for Debtors to develop an estate plan, and to distribute assets for the benefit of the creditors, until the Adversary Proceedings are resolved. Debtors are seeking to recover approximately $4 billion of Deposits in the Turnover Action, and billions of dollars in additional assets through avoidance claims asserted in the JPMC Adversary Proceeding. As the Bankruptcy Court surely understood, it is critical to the estates, and to the purposes of the bankruptcy laws generally, that these actions move forward. *See In re Harris*, 464 F.3d 263, 271 (2d Cir. 2006) (noting that "the primary goal of courts as enforcers of the bankruptcy rules should be to ensure the swift and efficient resolution of disputes pertaining to the distribution of the bankruptcy estate" (quoting *In re CPDC Inc.*, 221 F.3d 693, 699-700 (5th Cir. 2000))).

If JPMC and the FDIC are nevertheless permitted to pursue an interlocutory appeal, they will undermine these critical interests and effectively secure exactly the delay that the Bankruptcy Court sought to avoid. *See Truong*, 2007 WL 1816048, at *3 ("[I]f the Court determines that the Bankruptcy Court was correct as a matter of law, this litigation will not be advanced, but would be considerably delayed by the time and cost that would be expended by the parties in briefing and arguing the appeal."). The Bankruptcy Court issued its ruling declining to apply the FIRREA jurisdictional bar based on careful consideration following extensive argument and briefing. The FDIC and JPMC should not be permitted to effectively undo the Bankruptcy Court's ruling simply by requesting an interlocutory appeal. *See In re Keene Corp.*, 166 B.R. 31, 33 (Bankr. S.D.N.Y. 1994) ("If an aggrieved litigant could stop or hinder lower court proceedings simply by filing an unauthorized notice of appeal, he could interrupt the progress of the proceeding at will.").

### C.    There are no Exceptional Circumstances Justifying Interlocutory Appeal

JPMC and the FDIC should not be granted leave to appeal for the added reason that there are no "exceptional circumstances" justifying such extraordinary relief. *Truong*, 2007 WL 1816048, at *2 ("Finally, an appellant must establish 'that exceptional circumstances justify a departure from the basic policy of postponing the review until after the entry of final judgment.'" (quoting *Matter of Magic Restaurants, Inc.*, 202 B.R. 24, 26 (Bankr. D. Del. 1996))).  JMPC argues that such circumstances exist here because there are three "identical" cases pending in "in two different fora." (JPMC Brief at 32.)  This is entirely misleading and reflects a fundamental misunderstanding of the DC Action.  Debtors brought the DC Action, at the conclusion of the FIRREA claims process (and as directed by the FDIC in its Notice of Disallowance), to ensure that they would not forfeit their claims against the FDIC.  Unlike in the Adversary Proceedings, Debtors are not seeking to recover estate assets in the DC Action and they have not asserted claims against JPMC.  As the Bankruptcy Court observed, the DC Action and the bankruptcy proceedings involve "distinct claims against distinct parties." (B95, Tr. 6/24/09 at 95.)[15]

---

[15]    The FDIC ignores the "exceptional circumstances" requirement altogether, *Truong*, 2007 WL 1816048, at *2, and Debtors' discussion on this issue is therefore addressed to the arguments advanced by JPMC.  The FDIC does include a section at the end of its brief, however, in which it argues that the Bankruptcy Court erred by failing to stay the Adversary Proceedings pursuant to the "first filed" doctrine. (FDIC Brief at 23.)  But the FDIC does not address any of the criteria that it is required to meet in order to be eligible for leave to appeal on this issue, and it is blatantly asking this Court to revisit the Bankruptcy Court's "first filed" ruling without any explanation as to why it would be appropriate to do so on an interlocutory basis.  In fact, interlocutory appeal is plainly not available with respect to the Bankruptcy Court's highly discretionary decision not to stay the Adversary Proceedings in favor of a separate action elsewhere.  *See Gulfstream Aerospace Corp.*, 485 U.S. at 279 (holding that collateral order doctrine did not authorize appeal from an order denying a motion to stay or dismiss an action on *Colorado River* abstention grounds).  In any event, the Bankruptcy Court was correct.  As discussed in text, the DC Action and the Adversary Proceedings involve different parties and different claims, and are not "on all fours." *See Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 334 n.6 (3d Cir. 2007).

JPMC's complaint that it "finds itself" in a "litigation morass" also ignores that it is a situation of its own making. (JPMC Brief at 34.)  JPMC chose to file proofs of claim in the Bankruptcy Court; it chose to file its Adversary Proceeding; and it chose to file its motion to intervene in the DC Action.  Also, rather than permit the bankruptcy proceedings to move forward efficiently, JPMC has bombarded Debtors with motions designed to prevent the Bankruptcy Court from addressing the merits of their claims and disposing of the estates' assets (*e.g.*, the Stay Motions, the motions to dismiss, and the motions to withdraw the reference).  In any event, JPMC has made no showing that it is unable to meet its obligations in all pending matters, and its supposed burden in participating in those matters therefore does not give rise to an "exceptional circumstance" justifying interlocutory appeal.  *See In re Delaware and Hudson Ry. Co.*, 96 B.R. 469, 473 (D. Del. 1989) ("Similarly, there are no exceptional circumstances that justify the need for immediate review. NYSDOT asserts that because of budgetary restrictions it will be unable to fully participate in the litigation if venue remains in Delaware.  This is not an exceptional circumstance justifying departure from the basic policy of postponing review.  The decision of the Bankruptcy Judge was the result of the careful weighing of conflicting interests and equities based upon the particular circumstances of the case before her, including the financial restrictions of NYSDOT.  Thus, appellate review of the Bankruptcy Court's order will have to await further disposition of the case below."); *Matter of Magic Restaurants, Inc.*, 202 B.R. at 26 ("Although Magic asserts that determining this issue now would save time and avoid having to resolve other factual and legal matters, Magic has not sufficiently established an urgency that sets this case apart from the typical case.").

JPMC next urges that its purchase of WMB served the public interest, that it should be immunized from suit so that it will have an incentive to perform similar good deeds in the future,

31

and that the Bankruptcy Court failed to give these supposed considerations adequate attention.

(JPMC Brief at 33-34.)  First, FIRREA plainly does not immunize parties from Bankruptcy Code

avoidance actions.  (*See* note 13 *supra*.)  Furthermore, such dubious and self-serving claims by

JPMC should have no place in the consideration of these motions.  Indeed, the reality is that

JPMC did not act out of altruism—it purchased WMB's assets at an extraordinarily low price

and has profited handsomely as a result.  *See* JPMorgan Chase & Co., Form 10-K for FY ended

Dec. 31, 2008, at 26, http://investor.shareholder.com/jpmorganchase/sec.cfm?doctype=Annual

(JPMC realized a $1.9 billion gain, in excess of the total consideration it paid for the assets of

WMB).  In any event, even if JPMC were right that successor banks are entitled to complete

immunity under FIRREA, that is an argument that JPMC can just as effectively pursue on appeal

from a final judgment in the adversary proceedings.  *See Magic Restaurants, Inc.*, 202 B.R. at

26-27 (denying leave to appeal where party failed to demonstrate "some circumstance or reason

that distinguishes the case from the procedural norm and establishes the need for immediate

review").

Finally, if any "exceptional circumstances" exist here, those circumstances support the

Bankruptcy Court's decision to move forward with the Adversary Proceedings.  There is a strong

and long-standing public interest in the "prompt and fair resolution of bankruptcy cases."  *See In*

*re Frascella Enterprises, Inc.*, 388 B.R. 619, 629 (Bankr. E.D. Pa. 2008) (denying debtor-in-

possession's request for a stay pending appeal, reasoning that such relief would "undermine the

integrity of the bankruptcy process"); *Katchen v. Landy*, 382 U.S. 323, 328-29 (1966) ("[T]his

Court has long recognized that a chief purpose of the bankruptcy laws is "to secure a prompt and

effectual administration and settlement of the estate of all bankrupts within a limited period.")

(citations omitted); *see also Feld v. Zale Corp. ( In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir.

32

1995) ("[W]hen we define 'related to' jurisdiction, we should avoid the inefficiencies of piecemeal adjudication and promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate.") (citation and internal quotation marks omitted)); *In re Aronson*, No. 94-2497, 1994 WL 497541, *7 (E.D. Pa. Sept. 12, 1994) (finding that a liberal interpretation of 'party in interest' could lead to delay and would "ultimately clash with the need for prompt and efficient resolution of a bankrupt's estate"). This is a massive bankruptcy with numerous creditors awaiting an estate plan and the distribution of assets. It will be impossible for Debtors to formulate an appropriate plan for as long as JPMC and the FDIC erect procedural barriers—including now the prospect of an interlocutory appeal—for the purpose of stalling these proceedings. The Bankruptcy Court was correct to move forward in the Adversary Proceedings, and JPMC and the FDIC should not be permitted to upset the Court's carefully considered ruling by pursuing an interlocutory appeal that rests ultimately on a mistaken understanding of FIRREA.

## CONCLUSION

For the reasons discussed, Debtors respectfully request that the Court deny the motions by JPMC and the FDIC for leave to appeal.

Dated: July 24, 2009
      Wilmington, Delaware

**ELLIOTT GREENLEAF**

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Neil R. Lapinski (DE Bar No. 3645)
Shelley A. Kinsella (DE Bar No. 4023)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
E-mail: rxza@elliottgreenleaf.com
E-mail: nrl@elliottgreenleaf.com
E-mail: sak@elliottgreenleaf.com

-and-

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
Peter E. Calamari
Michael B. Carlinsky
Susheel Kirpalani
David Elsberg
51 Madison Avenue
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Special Litigation and Conflicts Co-Counsel to Washington Mutual, Inc. and WMI Investment Corp*